Creedmanoa.  May it please the court, my name is Jay Ofsiyavich and I represent the appellant Ramian Berg. This case resulted from a traffic stop on the New York State Thruway. For context, it was a pretext stop. The trooper and the investigator who stopped the vehicle received an alert that a vehicle of interest had crossed the Tappan Zee Bridge and might be heading in their direction. The reason given for the stop was an unreasonable determination that the driver of the vehicle committed a fog line violation. Contraband was subsequently seized from the vehicle. After the district court denied Mr. Burt's suppression motion, he entered into a conditional plea agreement permitting him to challenge the district court's denial of his suppression motion. While I've raised four issues in my brief, it is my intention this morning, or actually this afternoon, to focus on whether there was probable cause to stop the vehicle and if I have time, I'd like to address the due process violation that I've raised in my brief. I intend to rely on my papers for the remaining issues. As to the traffic stop, contrary to the district court's conclusion, Trooper Van Buren lacked probable cause to believe that Mr. Burt committed a traffic infraction. According to the trooper, Mr. Burt committed a fog line violation and ticketed him for failing to maintain his lane. He was also ticketed for failing to signal before making a turn or a lane change. The trooper testified that he observed the tire on the passenger side of the Silverado, which was traveling on the right-hand side lane, crossing the solid white line, then drifted to the left-hand side where the driver's side tires touched the dotted line. He said this occurred three times. Under New York case law, this isn't enough to determine that there was a violation of the vehicle and traffic law. Something more is necessary. There must be public safety concerns, such as weaving, driving erratically, driving on the shoulder, or some other basis for the stop that related to unsafe driving. A fog line violation is not enough. In concluding that he observed a traffic violation- What about the Second Department's case in People Against Paris and in People Against Tandle? It seems to me that the officer's testimony is almost suspiciously tailored to meet exactly what the appellate division has said is required, which is more than one instance of going over the fog line accompanied by weaving back and forth in the lane. That's exactly what occurred here. Well, actually, if you look at- and these are some of the cases that were cited by the government. In Paris, I think you can distinguish it because it was clear that the vehicle, while it crossed the highway twice, it crossed onto the shoulder. And it didn't just cross over the fog line or didn't just touch the fog line. It crossed over more than two times with its right side tires. It didn't say the whole car got into the- No, but it's talking about going into the shoulder. So I think that distinguishes it from just crossing the line here. Isn't the fog line what separates the shoulder from the traffic lane? Yes, but when you- So if you cross over it, aren't you on the shoulder? Depends on how far over. If you look at many of the other cases of government- Yeah, but in Paris, the specific finding is that the car went over the line more than two times with its right side tires and then drifted back toward its lane. Here we have the testimony that three times, more than twice, the wheels went over the fog line and then the car weaved back so far into its lane as to touch the very end of that lane. Now, I don't know, again, a cynic might think that this testimony was tailored to match that case, but the fact is it does match that case, right? I mean, that's- It's similar. I think we need to look, you know, the case doesn't fully describe what happened as compared to some of the other cases that the government relies on. It does say that it goes onto the shoulder, but we see in other cases where they talk about the shoulder, such as Tandle- Well, but Tandle- Half the car crossed onto the shoulder. Well, isn't the standard here just whether the officers were objectively reasonable or whether- even if it was a mistake in the law, that it was an objectively reasonable one? So whether it's, you know, on the line or across the line or how many times, I mean, aren't we sort of in that realm? Well, on the line would not be a violation, and I think there's some analogies we can look at. You know, you look at tennis, a ball hits the line, you know, it's still in. Yeah, the rules are different in soccer than they are in basketball and so on, but the rules here- You look at- We've got Davis on the- We've got Harris on one side and Davis on the other side says where he had- but did not cross the line without evidence of weaving or driving erratically. That seems to be two cases that set the tone. One is if you go over the line more than once and weave around, that's probable cause, but if you just touch the line and don't weave around, that's not. Right, but that's why we need to look at the cases that address whether, you know, such as Davis or Binco or McLean, which talk about erratic driving, talk about swerving, talking about unsafe driving. Well, isn't that exactly what- I mean, the officer here says weaving rather than drifting. Does that make a difference? The investigator said weaving. The investigator, though, was not participating in making a decision- The investigator said even on cross-examination that there was weaving and said that that was a possible indicator of driving while intoxicated. No, he was- well, it could be an indicator, but he had no belief that there was intoxication and he- even when he approached the driver- Right, he didn't say that, but if that is such an indicator, again, doesn't that give some reasonable suspicion at the very least that there is a traffic violation? Well, I think that's why we need to look at the whole reason why they were- that this was a pretext stop. Not saying that they can't make a pretext stop, but they're looking for an excuse, and the excuse here was- And I- as I said before, it does seem to me that this is so clearly testimony that matches the facts of Paris that one might wonder about it, but there's a credibility determination that isn't clearly erroneous that that actually is what happened. So I'm having trouble saying why there is not a basis for the traffic stop. Because I think we need to look deeper into those cases beyond just Paris. We need to look at Schumacher, where, you know, you had the violation, and you had the description of the violation that met public safety requirements, where you have Rufus, which talks about the vehicle departing the lane unsafely, and that there was- In cases where the behavior is worse and probable cause is found, the question is, where is the line here? And are there cases that match these facts that say the stop was improper? That's why we have to look at the law itself, which was not done in this case. Which brings me to the whole due process question. When counsel requested the opportunity to file a post-hearing memorandum or brief to address these cases and to put it before the court and was denied this opportunity- But you put it before us, right? So we're not persuaded. I don't understand. I mean, we either were persuaded by your argument, in which case you win, or we're not, in which case you lose, right? Right, yes. So whether you got the opportunity to submit those cases to the district court or not, you submitted them to us. Yes, we are. But there is also the prejudice that my client has felt at this point. Because the court didn't address it, there wasn't an opportunity to possibly persuade the court that this was wrong, and the opportunity to look at the testimony of the trooper and to raise questions. If you look at what counsel did when questioning Trooper Van Buren, the counsel started to raise questions as to whether or not this was a violation. And what this was doing was setting up the argument to be addressed in a legal memorandum after the hearing as to what the violation really was. Is it just crossing the line? Is that enough of a violation under the law in New York State? And you'll see this in the questioning that occurs in the pages 62 and 63 of the joint appendix. So we have that, you know, that opportunity was lost. And under, you know, due process is supposed to give a defendant the opportunity to raise these questions and to put forth their facts of the case and their legal arguments of the case. So there was prejudice that my client experienced because of this. Now we have to come to you, you know, he was convicted without being able to put forth his case. He is in prison, you know, serving his sentence at this point. So there is prejudice that's been felt, whereas he could not put forth his defense. Thank you, Counsel. We'll hear from your co-counsel. Or no counsel for Mr. Frampton. Good afternoon, Your Honors. Eric Gallardo on behalf of Marion Frampton. May it please the court. Counsel, I don't want to belabor too much. What my colleagues talked about with respect to the lane violations, except perhaps to note, at least in my reading of Harris, I read, I put a quote here, the car crossed onto the shoulder two times. And I don't know if that means a tire or cross the entire car. But I think that is significant. I think that's significant in connection with the actual statute, which does have a safety component to it. Not only do you have to maintain your lane integrity, but it has to, obviously you can change lanes. You have to signal and you have to make sure you can do so safely. There's nothing that prohibits you from using the shoulder, in fact. That's what it's there for if there's an emergency. But the issue is whether the car crossed over the shoulder, whether you had a tire skirt the shoulder, or as I said in my papers, whether there's flirtations with fog lines. There does have to be, as my colleague said, some sort of public safety component. But to address Your Honor's question about the mistake of law, I think the leading case on that seems to be, and I'm probably mispronouncing this, but a high in the Supreme Court decision, which in that case dealt with kind of a pesky particle, the letter A, and whether one, I think it has to do with brake lights or license plate lights, whether you need one or two to be operational in order for it to constitute a violation of a North Carolina statute. And in that case, because of that little pesky particle, A, the Supreme Court said, look, that's a reasonable mistake. The officer could have made a reasonable mistake in believing that that constituted a violation of a traffic law under North Carolina law. And we're going to allow reasonable suspicion to encompass such reasonable misinterpretations of the law. In this case, I think there's a more clearly differentiated, a clear line demarcating from what would constitute a lane violation and what does not. This is more of an either or proposition than, you know, whether we're dealing with something that a grammarian would take to bite it. I have a different question about our review then. If the district court said that the Silverado failed to maintain its lane or use a turn signal while swerving over the middle dotted white line, is that something we would review for clear error? Well, that's interesting, Your Honor, because the district court used the word swerve, which seems to be the word or the testimony called from that of the investigator who was accompanying or riding shotgun to the trooper who actually performed the traffic stop. That was his testimony, not the testimony of the trooper who was driving the car and actually performed the traffic stop. And importantly, the investigator admitted that he conceded that he never told the trooper or imparted his observations to the trooper. It reminds me, like, about a couple months ago, I was driving with my sons down, we were upstate, so down the north way, and all of a sudden, out of nowhere comes a deer. I hit a deer, okay? I had the misfortune of hitting a deer. My fortune was a little better than the deer's, but that happened. And I was on the side of the road waiting for some help. My son said, you didn't see that? I saw the deer was, like, you know, over on the side of the road. I said, well, thanks for the update, sonny. In other words, if you don't communicate it to me, it's as if it didn't happen, you know? And in this case, the trooper pulls over. Right. So your argument is that we should evaluate this solely based on the testimony of the officer who made the decision to make the stop. Exactly right. Because he was not informed of anything. He could rely on his fellow officer's probity if the fellow officer saw something that he didn't see, if it was told to him, but not if it wasn't told to him. Exactly right. And again, if we were reevaluating the facts on a cold record, which we shouldn't do, it is curious that Dulk, who is sitting on the right-hand side of the car, sees a more dramatic departure into the left-hand lane than the guy who's actually closer to that part of the car, while it's the driver of the car, Van Buren, who makes the decision to stop, who seems to see more of a violation on the right-hand side than the guy who's sitting on the right-hand side. Exactly right. And we don't want to be cynical here, but the investigators seem to have about 10 years' experience on the trooper who performed the traffic stop. But I don't want to be cynical. The other issue that I wanted to just briefly touch on was the search of Mr. Frampton. And I can see that, look, if the trooper Van Buren legitimately saw a marijuana baggie in my client's jacket pocket, he could search him incidental arrest. They had done the search anyway just based on the smell and the grinder on the center console. Wouldn't that have been enough to bypass the search of Frampton altogether? To search the car? Correct. To search the car, yes, but I don't know if that necessarily gets you to the search of Mr. Frampton. I understand that there's an inevitable discovery argument there, but I think the court just simply said something that was an add-on at the end of its decision. The officer could have, the troopers could have searched Mr. Frampton based on the discovery. Well, yeah, I guess that's my question, is does this not all go to inevitable discovery? Because once the smell, once the officer identified the smell and the grinder, then they said that they would have searched the vehicle and the same evidence would have turned up. Whether they went through the Frampton pocket or not. Yeah, and I was wondering about that because I noticed there's about a page and a half of testimony devoted to inevitable discovery, and I think my colleague below did object to a form of a question, but otherwise I think it was the judge that shut down the question on it. But there was a, you know, it was only about a page and a half, and I think inevitable discovery, at least under this court's Heath decision, does require a little more than just they could have. You know, they could have, like the old Don Meredith at the end of the Monday Night Football. If in butts were candies and nuts, we'd all have a merry Christmas. I think the word, just because you could have searched the vehicle and could have arrested Mr. Frampton, does not necessarily rise to the level of supporting the application of the inevitable discovery doctrine, which does require, I think, a high degree of confidence that each step would have been taken. In this case, each step would have been the search of the car and then the search of Mr. Frampton. Now, under the facts of the case, even at the hearing, I think you can discern that the trooper had to use a key to get into the glove compartment to get the drugs. While the car was rented. But he did say, but in fact, what happened is Van Buren says that he did see this sticking out of the pocket. Yes. And as far as I can see, the argument that's being, the only argument that's being made here is that there should have been, he should have been, the counsel should have been allowed to ask how tall Van Buren was to make a record that he probably couldn't see over the side of the car into where the passenger was sitting, because it's kind of an elevated trucky thing. That's certainly part of it. I think the judge, and I think the judge did this without prompting. I don't think there was an objection made at the time. He just said, he just shut down the questioning. There could have been other questions that followed up from that. But I think for the trooper, I don't think the record reflects how tall and short he was, but which I think is the issue here, would almost have to have almost perpendicular vision to have seen the marijuana in the pocket. Well, it depends how tall he actually was, I suppose. But everyone in the courtroom could see how tall he was or wasn't. So if he's like preternaturally short or something, that would be one thing. Concededly, I couldn't, Your Honor. I think the way it was situated, it was difficult for me to judge. But there's no record of it. And so we could assume that the court said, oh, he's tall enough. But we don't know, because there's no record of it. And that's really what Mr. Frampton was asking for. Most of his, the only reason I submitted as part of his appendix, the memorandum of law submitted initially is to show that this was the primary argument for Mr. Frampton, because I don't think anyone really knew about the particulars of the lane violation until we got to the actual hearing. Other than that, I'd like the rest of my papers, and I thank the court for its time. And if you're out there, be careful of the deer. Thank you, counsel. And if you're out there and you see a deer, tell the person driving, please. We'll hear from the government. May it please the court, Rajiv Dosanjh for the government. I'll jump in with the traffic stop, the validity of the traffic stop first. I think the defendants here, with their citations to case law, have really only established that reasonable minds looking at this traffic statute could disagree. And I think we are squarely in, at most, the situation that was in Hine before the Supreme Court. This was an objectively reasonable view of the law according to the facts that the district court found. Even courts in the, some appellate courts in New York have said even one crossing over the fog line can suffice. And here we have three. We have the movement back touching it, at the very least, the dotted line in the middle. I think just on the testimony of Van Buren, you could find that this, again, was an objectively reasonable interpretation and there was a valid stop here. I don't think the court needs to wade into the various interpretations too much of New York law, but can decide this on the basis of Hine. Turning to the search of Mr. Frampton that was discussed, I think, as Judge Lynch pointed out, we have a finding that credited Trooper Van Buren's view of the plastic bag in the sweatshirt. And if you have that, along with the smell emanating from the car and the grinder, the marijuana grinder that's in the center console, and what Mr. Burt said to Van Buren, which was that I had smoked marijuana about two hours earlier, at the very least, there's probable cause to search the car. And given the view of the plastic baggie with marijuana, there was probable cause to search Mr. Frampton. I think those are the narrowest grounds that the court can uphold that search. As far as the conduct of the hearing, I think the judge did allow a cross-examination that elicited that it was a dark night, that Van Buren couldn't recall where Frampton's hands were, whether they were at his side, and the fact that the bag did not fall from Frampton's pocket when he was asked to get out of the car, even though it was on the edge of the pocket. He also had testimony from Investigator Duelk that he did not see the bag when he was talking to Frampton. So the issue of the basis of the observation was squarely before the district court. He did not allow testimony about how tall Officer or Trooper Van Buren is. That was a fact he could observe himself. And even without the observation of the bag of marijuana, because of the probable cause to search the car, I think it's a very easy step to say that the search of the car would have discovered a large quantity of drugs and Mr. Frampton and Mr. Burt would have been arrested and searched as an incident to an arrest. We have the testimony here. Unlike in Heath, and I think Heath is actually a valuable contrast, in Heath, the circuit said, this court said that while the evidence before us, the record before us only demonstrated that reasonable police could have arrested Heath, there was no evidence that they would have. And here we have that evidence in the form of testimony from Trooper Burt that, sorry, Trooper Van Buren, that he would have arrested and searched the car. So I don't think that we are jumping very much into the could have. I think we're definitely in the would have area here. So in terms of also the argument that was made by defendants as to the extension of the stop, I think, as we argued in our brief, because of the smell of marijuana, because of the evidence of the grinder and the response by defendant Burt that he had smoked marijuana recently, I think we are no longer just performing a traffic stop. They could extend the stop to allow investigation. So there was no unconstitutional extension of time here. And both the investigative dual and Trooper Burt testified that the total amount of time here from the stop to the arrest is about 15 minutes. So the search was done with speed and there was no unconstitutional delay, even as once you get outside of a traffic stop situation, you're allowing investigation. Even then, I think the law is not clear as to how long you have to do that, but it was definitely less than 15 minutes, I think, as it would be reasonable under the Fourth Amendment. Unless the court has other questions, I'll rest on the arguments in the brief and ask the court to confirm. Thank you, counsel. The government wants us to rely on an objectively reasonable interpretation made by the officer and relies on Hines for that. I think it's important, though, that if we're going to look at Hines, we should also look at Justice Sotomayor's dissent in Hines. And in dissent, she was relying on other case law from the court in Ornelas and in Pullman Standard. You don't only look at the officer's reasonably objective interpretation of the law, but you also have to look at the law itself. And I think that's why we have to look carefully at how the New York courts have looked at this and that they want to see more than just the crossing of the fog line. And we see that in the majority of the cases that there must be a public safety concern, there must be dangerousness involved, and we don't see that here. So I think that's important for us to consider when looking at what's happened in this case, what the law is, and that's not what we found here. I won't go into the cynicism of whether or not the investigator was able to tailor his testimony. I don't think his testimony related to the violation or the alleged violation should be considered because it was the trooper who made the decision on his own to initiate the stop. The investigator never said, look what happened. He never said, see it. He never said, turn on the lights. If there was such a dangerous situation that he observed, it probably should have been stopped before three occurrences. That didn't happen here. So I think that doesn't make any sense. I mean, if somebody drifts a little bit one way but is mostly staying in the same lane, that's very different than if somebody is weaving back and forth across the lane and going over the line on the right side more than one time. That's why the case law says if it's more than two times in the one case that seems closest to this one, that's when you really should do something about it. But that's just it, Your Honor. According to the investigator, he was swerving. He was acting in an erratic behavior. Van Buren said. Van Buren talked about him drifting. Drifting is different from swerving? Yes. Drifting, you're moving with the current. It's an easygoing manner, whereas swerving is much more erratic, much more dangerous. And those are the cases where we're seeing that difference, and that's why you have to look at what the law is saying. Drifting is different than weaving? It would be as well, yes. All right. Yes, Your Honor. In conclusion, we just ask that you, excuse me. We vacate the. Reverse the conviction. Yes, thank you. Vacate the judgment and send it back to the district court. Thank you, counsel. Thank you, Your Honor. Thank you all. We'll take the case under advisement.